SUCESORES DE ABARCA, INC., Plaintiff and Appellant, v. SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 11679. Resubmitted May 23, 1958.—Decided June 19, 1958.

470

*Fiddler, González & Nido* and *Carlos J. Faure* for appellant. *J. B. Fernández Badillo, Attorney General (José Trías Monge, Ex-Attorney General,* on the brief) and *Cándido Ceballos, Assistant Attorney General,* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On September 12, 1952 the domestic corporation Central San José Inc., sold to the Venezuelan stock company Ortiz y Mejías, all the machinery and equipment of the Central San José, located in Río Piedras, Puerto Rico; on October 20, 1952, Ortiz y Mejías sold the same goods to Central Tocuyo, a Venezuelan stock company; on the same October 20, 1952 Central Tocuyo entered into a contract with the domestic corporation Sucesores de Abarca, Inc., for the dismantling, repairing, crating, and transportation to the San Juan pier of the machinery and equipment of said sugar mill and the reinstallation of the same in the town of Tocuyo, State of Lara, Venezuela. On January 1, 1953 the Central San José had been dismantled and part of its equipment lay

on the piers and part in the place occupied by the sugar mill (Tr. 22). The first shipment of the goods to Venezuela took place on January 28, 1953 (Exhibit 1), and the last shipment took place on October 16, 1953, (Tr. 21).

There is no doubt that by January 1, 1953, said dismantled goods had become personal property— § 290 of the Political Code of Puerto Rico, 13 L.P.R.A. § 443—that they were under the care, custody, and responsibility of Sucesores de Abarca, Inc., (Tr. 88–92–98–103). There is likewise no doubt that some of those goods were replaced, repaired and even sold in Puerto Rico (Tr. 105 and 112).

On December 30, 1953 the Secretary of the Treasury notified the appellant that he had levied a property tax amounting to $10,290 because on January 1, 1953 it was in possession of certain personal property, owned by a foreign company. The appellant appealed to the Superior Court of Puerto Rico, which denied the petition of cancellation of the tax receipt sought by the appellant. On appeal to this Court Sucesores de Abarca, Inc., alleges that the lower court erred in "holding and maintaining that the assessment of the tax upon the appellant under the provisions of § § 293 and 295 of the Political Code of Puerto Rico, was proper."

In the error assigned there is a group of problems that set forth in synthesis are as follows: (1) not being owner of the dismantled property, the appellant has no tax liability; (2) the case being as it is of property purchased by a foreign company for the purpose of transporting it to another country, said foreign company has no tax liability either; (3) granted that it had, said company had a representative and an office open at the time of the assessment.

■■ It is true that on January 1, 1953 the owner of the dismantled goods of the Central San José was the Venezuelan company Central Tocuyo, but being a foreign company, the assessment had to be made upon the person having possession of said property in Puerto Rico on January 1, 1953— § 293 of the Political Code of Puerto Rico—13

L.P.R.A. § 445. As a matter of fact, property tax is levied directly on the personal property and the owner of said property is liable on the tax day set for the assessment. As correctly held by the lower court, it is a mechanism of law to render possible the assessment of a tax on property the presumptive title of which is held by the possessor.

■■ It is incorrect to maintain that when a foreign company purchases certain personal property for the purpose of transporting it to its country, it has no tax liability towards the State in whose territory the purchased property is found. The determining test of tax exemption is not the purchase but the physical fact of transportation. While the property remains in the territory over which a particular State exercises its tax power, it is part of the general mass of property subject to taxation. This power of the State emerges from its correlative obligation to maintain a public order that guarantees the conservation of said property. Thus for example, the established practical rule is that the tax immunity provided by Art. I, § 10, second clause, of the Constitution of the United States, prevails when on the tax date the personal property has entered the final stage of its process of transportation from the State of origin to the other State, it not being sufficient for such purposes that there be an intent to ship the property, even if after the tax date shipment is actually effected; or to deposit the property for the purpose of future exportation from said point. It is indispensable that there be an affirmative action on the part of the vendor irrevocably placing the goods in the final stage of leaving the State. To attain this certainty the following is held sufficient: (1) that the goods be delivered to a carrier for immediate shipment; (2) the certainty that the property is ready to be put in course of foreign commerce and as a practical question, that it could be directed to foreign rather than to domestic use: *Coe* v. *Errol*, 116 U.S. 517, 527, 29 L. Ed. 715, 719 (Bradley 1885) ; *Empresa Siderúrgica, S. A.* v. *Merced*, 337 U.S. 154, 157,

93 L. Ed. 1276, 1280 (Douglas 1949); *Hardley Fisheries Company* v. *City of Seattle*, 314 P.2d 393, 395 (Ott. 1957). To a certain extent this point is already elucidated by our case law; *Island Needlework* v. *Tax Court*, 65 P.R.R. 685, 688 (Travieso 1946); *Buscaglia, Treas.* v. *Tax Court*, 68 P.R.R. 839, 842 *et seq.* (Travieso 1948).

■ As to whether or not the Venezuelan stock company Central Tocuyo had a representative or office in Puerto Rico by January 1, 1953, the trial court found that Mr. Jacques de la Bastide, rather than a representative, was a technical adviser in the dismantling, repairing, replacement and crating of the owner's machinery and equipment. Irrespective of his capacity as such adviser, Mr. Jacques de la Bastide did not hold, in the name of his principal, the possession of the general mass of the property, liable to be taxed, nor the civil or natural possession thereof. On the contrary, from the instance of its delivery on September 24, 1952, the entity that held possession of the personal property, civil as well as natural, was the appellant Sucesores de Abarca, Inc. Section 293 of the Political Code of Puerto Rico refers to the possession, "the personal property in the hands of" merchants, commissioners, assignees and persons having in their possession property belonging to another. Weighing the documentary as well as the oral evidence as a whole, the conclusion of the trial court is not "clearly erroneous," but rather simply logical. In Puerto Rico possession is not recognized as two distinct capacities: § 374 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 1448. Having placed the possession of property directly in the hands of Sucesores de Abarca, Inc., from September 24, 1952, by means of the delivery papers signed by all the parties, there is no room for any other figurative possession in the name of a technical representative.

The judgment appealed from will be affirmed.

Mr. Justice Santana Becerra did not take part in this case.